UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIANA C. VALLE, et al.,

    *Plaintiffs*,

v.

ANTONIS KARAGOUNIS, et al.,

    *Defendants*.

Civil Action No. 1:19-cv-03764 (CJN)

**MEMORANDUM OPINION**

A group of eight Plaintiffs sued Antonis Karagounis and two of his companies alleging racial discrimination and other claims arising out of Plaintiffs' visits to Karagounis's restaurant, Rewind by Decades, LLC ("Rewind"). *See generally* Second Am. Compl., ECF No. 37-1. Defendants have moved for summary judgment as to each Plaintiff and claim. Upon review of the parties' written submissions and the entire record, the Court concludes that no reasonable jury could return a verdict in Plaintiffs' favor. The Court will therefore grant summary judgment for Defendants. The Court will also order Plaintiffs' counsel to show cause for why she should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(c)(3).

**I.    Factual Background**

This suit stems from three separate incidents at Rewind. Two involved a Rewind policy requiring customers who dine after 10:00 p.m. to either pre-pay for their meals or provide a form of collateral, such as a credit card ("pre-payment policy"). Rewind adopted this policy in response to a recurring problem of patrons leaving the restaurant without paying for their meals during the late-night and early morning hours. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 1 ¶ 15 (Affidavit of Joseph Aguilar), ECF No. 47-1. The third

1

incident involved a similar policy requiring customers to pre-pay for a fixed-price Sunday brunch buffet ("fixed-price policy"). Under that policy, patrons can either purchase brunch tickets in advance through Rewind's website or simply pay the fixed price upon arrival at the restaurant. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Sullivan and Williams, Ex. 1 ¶¶ 6–8 (Affidavit of Joseph Aguilar), ECF No. 49-1. Rewind instituted this policy to address the logistical difficulty of charging customers for meals at its self-served, all-you-can-eat buffet. *Id.* ¶¶ 10–14.

Plaintiffs Valle, Gasca, LeBaigue, and Plazas ("Valle Plaintiffs") are Latina and allege that Defendants discriminated against them when a waitress asked them to pre-pay for their meals during an early morning visit to Rewind. In particular, they argue that the request for pre-payment was motivated by their race and national origin. The Valle Plaintiffs also bring claims for assault, false imprisonment, and intentional infliction of emotional distress (IIED), based on interactions with Rewind employees following their refusal to pay. Plaintiffs Tibe and Spence, who are African American, likewise allege that Rewind's pre-payment policy is discriminatory, and they couple that allegation with an additional claim for IIED. They similarly argue that they were asked to pre-pay because of their race—and that a Caucasian customer would not have faced a similar request. Finally, Plaintiffs Sullivan and Williams, who are also African American, allege that they similarly suffered unlawful discrimination when asked to pre-pay for the fixed-price Sunday brunch buffet. They also assert their own claims for assault and IIED.

## II.   Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When the

moving party does not bear the burden of persuasion at trial, its burden 'may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 60–61 (D.D.C. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 61 (quotations omitted). Although courts must view the evidence in the light most favorable to the nonmoving party, there still "must be evidence on which the jury could reasonably find for the nonmoving party." *Id.* (cleaned up). "Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008).

### III.  Analysis

#### A.  Plaintiffs' Claims

Start with Plaintiffs' discrimination claims, which are based on provisions of federal and D.C. law that prohibit discrimination on the ground of race or national origin in places of public accommodation. *See* 42 U.S.C. § 2000a(a); D.C. Code § 2-1402.31. Defendants argue that both the pre-payment policy and the fixed-price policy were adopted for legitimate business reasons and that both are applied equally to all customers. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 1 ¶¶ 15, 20 (Affidavit of Joseph Aguilar); Defs.' Mot. Summ. J. on Claims Asserted by Pls. Sullivan and Williams, Ex. 1 ¶¶ 10–15 (Affidavit of Joseph Aguilar). They stress that Plaintiffs have not presented any evidence to support a claim of disparate treatment, such as evidence that Caucasian customers are exempt from the policies. Indeed, they claim that Plaintiffs' own deposition testimony reveals that their discrimination claims are based on conjecture rather than fact.

Plaintiffs, for their part, try to support their discrimination claims by pointing to a few statements in the record. For example, at her deposition, Plaintiff Tibe said that she observed a group of Caucasian customers provide payment with credit cards at the end of the meal. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 3 at 49–51 (Tibe Deposition). Similarly, in an answer to an interrogatory, Plaintiff Williams said that he observed Caucasian patrons attend the Sunday brunch buffet without pre-paying at the restaurant. *See* Defs.' Mot. Summ. J. on Claims Asserted by Sullivan and Williams, Ex. 4 at 5 (Williams Answer to Interrogatory). And although no other Plaintiff corroborated her account, Plaintiff Gasca claimed—through an interpreter—that a waitress referenced Rewind having problems in the past with "people of color" leaving without paying for their meals. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 8 at 25–26 (Gasca Deposition).

Based on this record, Defendants are entitled to summary judgment on the discrimination claims. Plaintiffs offer no evidence to dispute Defendants' declarations, submitted under oath, that both policies were adopted for legitimate reasons and are applied equally to all customers. To the contrary, and as Defendants emphasize, multiple Plaintiffs admitted that they have no knowledge of other customers obtaining their meals without pre-paying while the policies were in effect. *See id.* Ex. 7 at 81 (Plazas Deposition), Ex. 8 at 21 (Gasca Deposition), Ex. 9 at 46 (LeBaigue Deposition), Ex. 10 at 51–52 (Valle Deposition); Defs.' Mot. Summ. J. on Claims Asserted by Pls. Sullivan and Williams, Ex. 3 at 44 (Williams Deposition).

Although Plaintiff Tibe claims that she observed a Caucasian group pay with credit cards at the end of the meal, she cannot rule out the strong possibility that, as permitted by Rewind policy, the group provided collateral and opened a tab. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 1 ¶ 22 (Affidavit of Joseph Aguilar) ("It

4

is common with groups who enter the restaurant after 10:00 p.m. to have one person provide a credit card upon arrival and then to have the group ultimately settle-up and pay a tab with multiple credit cards to split/divide the bill."). Similarly, to the extent Plaintiff Williams witnessed customers attend Rewind's Sunday brunch buffet without pre-paying *at the restaurant*, he has no knowledge about whether, as permitted by Rewind policy, these customers bought a ticket online. *See* Defs.' Mot. Summ. J. on Claims Asserted by Pls. Sullivan and Williams, Ex. 1 ¶ 6 (Affidavit of Joseph Aguilar) ("When Rewind has a ticketed fixed-price Sunday brunch, nearly all patrons typically purchase brunch tickets, in advance, through the restaurant's website, so that they have paid the fixed-price prior to arriving at Rewind."). And even if the testimony of Plaintiff Gasca were true, it would not establish that Rewind applies its policy in a discriminatory manner or that Plaintiffs themselves were discriminated against.

In the end, Plaintiffs' discrimination claims are based on sheer speculation. One Plaintiff, for example, stated at her deposition that it was her "belief" that a Caucasian customer at Rewind would receive a meal without pre-paying—but she admitted that she had no factual basis for her belief and that she did not observe a single Caucasian customer at the restaurant during her visit. Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 7 at 82, 115 (Plazas Deposition). Another Plaintiff admitted that she "could only speculate" that Caucasian customers would not be asked to pre-pay for their meals, and she based her speculation on the supposed "widespread knowledge" that Caucasians are "not discriminated against." *Id.* Ex. 10 at 67–68 (Valle Deposition). Still another Plaintiff, when asked why she believed she was required to pre-pay for the brunch buffet, stated only that she "can't see any other reason" besides racial discrimination. Defs.' Mot. Summ. J. on Claims Asserted by Pls. Sullivan and Williams, Ex. 2 at 75–76 (Sullivan Deposition). A final Plaintiff even conceded: "I don't know if it is racial or

5

discrimination." Defs.' Mot. Summ. J. on Claims Asserted by Pls. Valle, Gasca, LeBaigue, and Plazas, Ex. 9 at 55 (LeBaigue Deposition). Based on this evidence—or, more precisely, lack of evidence—no reasonable jury could conclude that Defendants unlawfully discriminated against Plaintiffs through either the pre-payment policy or the fixed-price policy.

Turning next to Plaintiffs' assault claims,[1] defendants are liable under D.C. law if "(a) they act intending to cause a harmful or offensive contact or an imminent apprehension of such a contact, and (b) the other party is thereby put in such imminent apprehension." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 92 (D.D.C. 2010) (cleaned up). What's more, a plaintiff must show "that a *reasonable person* in his position would have experienced such apprehension." *Collier v. D.C.*, 46 F. Supp. 3d 6, 14 (D.D.C. 2014) (emphasis added).

The Second Amended Complaint parrots the elements of assault, but the undisputed material facts come nowhere close to establishing that Defendants (or their employees) intended to cause an apprehension of physical harm or that a reasonable person in Plaintiffs' position would have apprehended such harm. Plaintiffs claim that after they refused to pre-pay for their meals, employees on Rewind's waitstaff raised their voices, demanded that Plaintiffs pay, and (in the case of the Valle Plaintiffs) followed them outside the restaurant. But assuming all of that occurred exactly as Plaintiffs assert, none of that behavior constitutes assault—and Plaintiffs make no real effort to convince the Court otherwise in their opposition to summary judgment. *See, e.g.*, Pls.' Opp'n to Summ. J. on Claims Asserted by Sullivan and Williams at 7, ECF No. 65-1 (contending that every African American male in Plaintiff Williams's position would have suffered

---

[1] The Court will retain supplemental jurisdiction over Plaintiffs' common law claims because they arise from the same nucleus of operative fact as the federal claims and judicial economy and convenience support retaining jurisdiction. *See Armbruster v. Frost*, 962 F. Supp. 2d 105, 116 (D.D.C. 2013) (retaining supplemental jurisdiction over common law claims after dismissing federal claim).

apprehension of "grievous bodily harm," including "unjustified murder," in light of the alleged general mistreatment of African American males in this country).

The same goes for Plaintiffs' claims for IIED and false imprisonment. To succeed on an IIED claim, a plaintiff must prove "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Bonner v. S-Fer Int'l, Inc.*, 207 F. Supp. 3d 19, 25 (D.D.C. 2016) (quotations omitted). Conduct is "extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotations omitted); *see also id.* ("Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficient." (cleaned up)). The undisputed material facts demonstrate that Defendants' conduct fell far short of meeting this "exceptionally demanding" standard. *See id.*

False imprisonment requires "(1) the detention or restraint of one against his will and (2) the unlawfulness of the detention or restraint." *Doe v. Safeway, Inc.*, 88 A.3d 131, 132 (D.C. 2014). The record reflects that no employee of Defendants ever impeded the Valle Plaintiffs' freedom of movement, whether by blocking their path or by physically restraining them. The Valle Plaintiffs do not argue otherwise in their opposition to summary judgment—in fact, they do not even defend or otherwise address their false imprisonment claims. Based on the Court's review of the record, the Valle Plaintiffs cannot establish that they were ever detained, much less that they were *unlawfully* detained. Nor can they show that they suffered a "reasonable apprehension of present confinement based upon the actions or words of" Rewind employees, as opposed to their own "subjective state of mind." *Saha v. Lehman*, 537 F. Supp. 2d 122, 126 (D.D.C. 2008)

(quotations omitted). Accordingly, no reasonable jury could find Defendants liable for false imprisonment.

### B. Rule 11 Sanctions

A court may impose sanctions on an attorney *sua sponte* under Rule 11(c)(3) if, "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." Fed. R. Civ. P. 11(c)(1). This power enables courts to "guard against abuses of the judicial process." *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

Plaintiffs' opposition briefs are littered with ad hominem attacks against Defendants and their counsel. Plaintiffs' attorney accuses Defendants and their counsel of making an "inherently racist and discriminatory argument," Pls.' Opp'n to Summ. J. on Claims Asserted by Valle, Gasca, LeBaigue, and Plazas at 8, ECF No. 63-1, and claims that the same "racist and bigoted" argument reveals "Defendants' and their counsel's prejudice and ignorance," *id.* And she recommends that Defendants and their counsel submit to "diversity and racial sensitivity training" just for arguing that Plaintiffs' assault claims are legally insufficient. Pls.' Opp'n to Summ J. on Claims Asserted by Sullivan and Williams at 7. These personal attacks demean the legal profession and constitute a gross abuse of the judicial process. The Court will therefore order Plaintiffs' counsel to show cause for why her conduct, as described above, does not violate Rule 11(b). *See* Fed. R. Civ. P. 11(c)(3).

### IV. Conclusion

The Court grants summary judgment for Defendants. Plaintiffs' counsel shall file a brief, not exceeding five pages, on the issue of Rule 11 sanctions within two weeks of this Memorandum Opinion's issuance. Orders accompany this Opinion.

8

DATE:  December 7, 2022

_____
CARL J. NICHOLS
United States District Judge